UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 OCT 15  A 9: 58

| | |
|---|---|
| Kenneth K. Radman<br>  Plaintiff, | :<br>: Civil No. : 302CV1868 (JCH)<br>: |
| v. | : |
| John Ashcroft, Attorney General,<br>U. S. Department of Justice,<br>  Defendants. | :  14<br>: October  , 2003<br>: |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

Kenneth Radman ("Plaintiff") is employed as a Correctional Officer for the Federal Bureau of Prisons ("Defendant" or "Agency") at the Federal Correctional Institution in Danbury, Connecticut. Plaintiff brings this civil action pursuant to Title VII, 42 U.S.C. § 2000e-16, *et. seq.*, FLSA, 29 U.S.C. § 216, and EAJA, 28 U.S.C. § 2412. Specifically, Plaintiff alleges that he was discriminated against on the basis of gender (male) when he was not selected for the position of Material Handler Supervisor, WS-03. Complaint, Paragraphs 14 & 28.

On August 12, 1996, Charles Stewart, Warden at FCI Danbury, selected Steven Jones (male) and Gail Mazzucco (female) for the position in question. Exhibit 1. Warden Stewart averred that, in making the selection, he considered the candidates' abilities, knowledge and skills, as well as their performance evaluation, any prior misconduct and their work ethic. Exhibit 2. . Warden Stewart further stated that, while

1

he selected the best two candidates for the position regardless of their gender, the selection did further the Agency's goal of providing a balanced work force to an all female institution.[1]

The Material Handler Supervisor duties include supervision of inmates who receive and store commissary merchandise. Exhibit 3 . Per Agency policy, inmates who work in the commissary are subject to strip searches whenever it is deemed necessary. Since Agency policy also requires strip-searches of inmates to be conducted by same-sex officers to the extent possible, having a well balanced staff of male and female officers allows the Agency to follow its policy without significant burden to the Agency. Exhibit 4.

## LEGAL STANDARDS

I.   **Title VII Discrimination**

Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e-16, prohibits discrimination against "any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2; see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 796 (1973); Chertkova v. Connecticut General Life Insurance Co, 93 F. 3d 81 (2nd Cir. 1996). When no direct evidence of discrimination exists, a Plaintiff may still prove a violation of Title VII by presenting a claim of disparate treatment. Disparate treatment occurs when an employer treats one or more individuals less favorably than others because of membership in a protected group as defined by Title VII.

---

[1]   In the spring of 1994, the Federal Correctional Institution at Danbury converted from a male inmate population to an all female inmate population.

International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977); Maresco v. Evans Chemetics, 964 F2d 106 (2nd Cir. 1992).

To prove a claim of disparate treatment on the basis of sex under Title VII, the Plaintiff bears the initial burden of persuasion in establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Reeves, 530 U.S. at 142. If the Plaintiff cannot prove the claim through direct evidence, the Plaintiff may meet the initial burden by offering circumstantial evidence to create an inference of discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 249, 253 (1981). Under the McDonnell Douglas analysis, if the Plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer "to articulate some legitimate, non-discriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802; Rogers v. First Union National Bank, 259 F. Supp. 2d 200 (D. Ct. 2003). To meet this burden, the employer need only produce admissible evidence that creates a genuine issue of material fact as to whether it intentionally discriminated against the complainant. Burdine, 450 U.S. at 254. The law does not require the employer to prove that it did not engage in purposeful discrimination or that the articulated reason led to the disputed action. Bd. of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 (1978). In Burdine, the Supreme Court recognized that "an employer has discretion to choose among equally qualified candidates, provided that the decision is not based on unlawful criteria." 450 U. S. at 459. Thus, federal courts have recognized that employers, including federal agencies, have the discretion to carry out personnel decisions. See Cameron v. Community Aid for Retarded Children, 335 F.3d 60, 66 (2d Cir. 2003) (relying on Burdine in holding that an employer's reliance on inaccurate reports did not

3

expose the employer to Title VII liability where the employer believed the reports at the time of making the personnel decision); Nat'l Treasury Employees Union v. Horner, 854 F.2d 490, 495 (D.C. Cir. 1988) (recognizing that agency personnel actions are not judicially reviewable unless provided for by statute); Tyler v. Ispat Inland, Inc., 245 F.3d 969, 972 (7th Cir. 2001) (finding that the denial of bonus or reimbursement monies is within an employer's discretion); Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998) (finding that an employee is subject to dismissal at an employer's discretion). In most instances, courts will not second-guess employers unless clear evidence of unlawful motivation exists. Burdine, 450 U.S. at 257 (noting that Title VII does not require the employer to persuade the trier of fact that it did not discriminate).

Once the employer successfully rebuts the complainant's prima facie case of discrimination, the Plaintiff may still demonstrate that the articulated reasons of the employer are a pretext for unlawful discrimination. McDonnell Douglas, 411 U.S. at 804. However, mere disbelief of the employer's explanation is not sufficient to establish a finding of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Accordingly, the Plaintiff retains the ultimate burden of proving discrimination. Burdine, 450 U.S. at 255.

## II.   **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

4

moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (1999). In determining whether summary judgment should issue, the facts and inferences must be viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). To meet this burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257.

Significantly, Plaintiff's ability to establish a *prima facie* case does not mandate denial of a motion for summary judgment. See Mario v. P&C Food, 313 F3d 758 (2nd Cir. 2002); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). The critical inquiry is whether discriminatory intent existed on the part of the employer. See *id*. If the employer's evidence of a legitimate, non-discriminatory reason is so strong as to completely rebut the inference raised by the prima facie case, the Plaintiff must provide additional evidence of pretext. Otherwise, a *prima facie* case alone is insufficient to create an issue of fact in light of the employer's compelling evidence. See *id*.

5

## ARGUMENT

Plaintiff alleges that he was subjected to sex discrimination, in violation of Title VII, when the Defendant did not select him for a material handler supervisor position. For the reasons set forth below, the Defendant asserts that the Plaintiff cannot establish his prima facie claim of sex discrimination. Furthermore, the Defendant can produce legitimate, non-discriminatory reasons for its actions, which are not pretextual. Because there are no genuine issues of material fact in dispute, the defendant proposes that summary judgment is appropriate in this case.

### I.     Plaintiff Cannot Establish a Prima Facie Case of Sex Discrimination

In order to establish a prima facie case of sex discrimination, the Plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; and (3) similarly situated employees outside his protected class were treated more favorably. McDonnell Douglas Corp., 411 U.S. at 802; McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001); Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (stating that disparate treatment can be shown by demonstrating that Plaintiff was treated less favorably than similarly situated employees outside his protected group); *but see* Brown v. Henderson, 257 F.3d 246, 254 (2d Cir. 2001) (holding that discrimination against one employee cannot be disproven solely by favorable treatment of other employees of the same sex).

In this case, it is not disputed that the Plaintiff is in a protected class or that he suffered an adverse action when he was not selected for the position. However, the Plaintiff cannot meet his prima facie burden without also demonstrating some

circumstances which give rise to an inference of discrimination. Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). Defendant asserts that the Plaintiff cannot produce sufficient evidence to establish this necessary element and, therefore, his prima facie claim of sex discrimination must fail.

Plaintiff was a GS-7 male correctional officer who applied for the material handler supervisor position. The Defendant selected a GS-7 male correctional officer and a GS-5 female correctional officer to fill the two material handler supervisor vacancies. *See Promotion Certificate.* Accordingly, the Defendant asserts that any inference of sex discrimination created by the selection of the female officer is nullified by the selection of the male officer as well. *See* Brown, 257 F.3d at 254 (noting that the fact that both male and female employees are treated similarly gives rise to the inference that their treatment shared a common cause unrelated to their sex).

## II.    Defendant can Establish Legitimate, Non-Discriminatory Reasons

In the event that the Plaintiff can establish a prima facie case of sex discrimination, the Defendant has the burden to produce legitimate, non-discriminatory reasons for its actions. The Defendant asserts that it can establish this burden because Warden Stewart made his selection based on the knowledge, skills, and abilities of the candidates.

In this case, the Plaintiff and two other applicants were placed on a "best qualified" list.[2] *Promotion Certificate.* Warden Stewart reviewed the applications of the

---

[2]    Pursuant to the Defendant's Merit Promotion Plan, all applicants for a particular vacancy announcement are ranked according to their experience, performance and awards. Specifically, the Agency rates the applicant's related experience based on each applicant's Knowledge, Skills and Abilities ("KSAs") as

7

best qualified candidates and determined that Steven Jones and Gail Mazzucco were the best candidates for the position. *Stewart Aff.* As stated above, Warden Stewart testified in an affidavit that, in making his selection, he considered the candidates' knowledge and abilities as well as their performance evaluations, any prior misconduct, and their work ethic. *Stewart Aff, p. 5-6.* Warden Stewart also took into consideration the institution's EEO plan and the goals they were trying to meet. *Id.* Based on these factors, Warden Stewart selected Mr. Jones and Ms. Mazzucco. Warden Stewart's selection was also supported by Associate Warden Janice Killian, who recommended Mr. Jones and Ms. Mazzucco for the position. Exhibit 5. Ms. Killian testified that she recommended Mr. Jones and Ms. Mazzucco because their job qualifications and experience made them better qualified for the position. *Id, p. 3.*

Additionally, Warden Stewart and Ms. Killian both testified that Ms. Mazzucco's selection better fit the needs of the institution. Because the institution houses female inmates, it is vital that the institution have enough female staff to adequately conduct strip searches of the inmates. Having a qualified individual who can also meet the institution needs of performing strip searches made Ms. Mazzucco an ideal candidate. *Id, p. 6.*

---

applied to specific job elements. These ratings are submitted on a Qualification Rating Form. The total score from these ratings is recorded on a Merit Promotion Ranking Form. A Merit Promotion Board, usually consisting of supervisors and representatives from human resource management, reviews each applicant's most recent performance evaluation and any awards received within the last five years and assigns points in accordance with the Rating Panel Scoring Instructions. These points are added to the rating scores already recorded on the Merit Promotion Ranking Form. Based on the total points of the rating score, performance, and awards, the highest scoring candidates are placed on a "best qualified" list.

8

The Defendant's policy on requiring same-sex strip searches absent an emergency situation is clearly supported by the Second Circuit Court of Appeals' recognition of limited privacy rights for inmates. In Forts v. Ward, the Second Circuit held that female inmates have a privacy interest in protecting themselves from the involuntary viewing of private parts of the body by prison guards of the opposite sex. 621 F.2d 1210, 1217 (2d Cir. 1980); see Johnson v. Temper, 38 Fed. Appx. 665, 666 (2d Cir. 2002) (reemphasizing privacy interest recognized in Forts v. Ward); Miles v. Bell, 621 F. Supp. 51, 67 (D.Conn. 1985) (holding that regular viewing of inmates by guards of the opposite sex while inmates are engaged in personal activities such as undressing or bathing can amount to a constitutional violation). The court subsequently applied this privacy interest to inmates who are subjected to visual body cavity searches. Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992). Certainly, the Defendant has an obligation to preserve the recognized Constitutional privacy rights of its inmates to the extent possible. Warden Stewart's selection of the most qualified candidates, one of whom also provided the additional benefit of meeting the particular need of the institution to conduct same sex strip searches, is a legitimate, non-discriminatory reason.

## III.   Plaintiff must Prove the Defendant's Reasons are Pretextual

Once the Defendant produces legitimate, non-discriminatory reasons for its actions, the Plaintiff bears the burden of proving that the Defendant's reasons are really a pretext for discrimination. Cifra v. G.E., Co., 252 F.3d 205 (2d Cir. 2001). To meet this ultimate burden, the Plaintiff must introduce additional evidence or argument to

demonstrate that there is a reason to disbelieve the Defendant's reasons. See Parnell v. Stone, 12 F.3d 213, *5 (6th Cir. 1993).

In a non-selection claim, the Plaintiff can prove pretext by demonstrating that his job credentials are so superior to the credentials of the person selected that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the Plaintiff for the job in question." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (citations omitted). Accordingly, Plaintiff may demonstrate that the Agency's legitimate reasons are a pretext for discrimination by proving that his qualifications were far superior to the qualifications of Ms. Mazzucco, the person outside the Plaintiff's protected class who was selected.

Pursuant to the applications submitted by Plaintiff and Ms. Mazzucco, both candidates had experience working as correctional officers, although Plaintiff had been working for the Defendant for a longer period than Ms. Mazzucco. Plaintiff received an "exceeds" rating on his most recent performance evaluation. Since Ms. Mazzucco had been working for the Defendant for less than a year, she was rated as "fully successful."[3] With respect to education, the Plaintiff had taken some classes at a junior college but did not receive a degree. Ms. Mazzucco had a bachelor of science in criminal justice. Accordingly, while the Plaintiff may have had more years of employment with the Defendant, Ms. Mazzucco had more educational experience in a

---

[3] Although not a written policy, the Agency's general practice is to give a new employee a fully successful rating on their first annual evaluation since it is not expected that an employee would become so proficient in their first year as to exceed expectations.

10

directly related field. Although the Plaintiff received a higher rating on his performance, Ms. Mazzucco's performance rating was arbitrarily restricted by the Defendant's general policy on rating probationary employees. Thus, the performance ratings in this case are not accurate indicators for comparing the qualifications of the Plaintiff and Ms. Mazzucco. Given that Plaintiff's work experience and Ms. Mazzucco's education arguably equate their qualifications, it would be difficult for the Plaintiff to prove that his qualifications were so superior as to make it unreasonable for the Defendant to have selected Ms. Mazzucco.

Plaintiff may also assert that the Defendant's reasons are pretextual because the Warden was really looking for a female to be available for strip searches. However, Warden Stewart's affidavit clearly states that his primary considerations for making the selections were the candidates' knowledge, skills and abilities. *ROI, Ex. 7, p. 5.* Furthermore, Ronald Schmidlin, the department head over the material handlers, testified that it was not necessary to fill the material handler vacancy with a woman because there was already a woman available in that area to conduct searches if needed. *ROI, Ex. 10, p. 5-6.* Thus, Plaintiff's argument that Warden Stewart specifically hired a woman because he needed a woman in the material handler position to conduct strip searches is not worthy of credence in light of the fact that the Defendant already had a woman in that department. Thus, while Warden Stewart recognized the additional benefit of selecting a woman to a department in which women are under-represented, there is no indication that the warden, in fact, relied on gender when making his selection of the most qualified applicants for the position. Accordingly, Plaintiff cannot meet his ultimate burden of proving sex discrimination.

11

## CONCLUSION

Plaintiff has the ultimate burden of proving that he was discriminated against on the basis of his sex when he was not selected for the material handler supervisor position. The undisputed facts demonstrate that the Defendant selected a male for the position in question. Accordingly, Plaintiff cannot establish his initial burden of producing some inference of discrimination. Furthermore, the Defendant can establish legitimate, non-discriminatory reasons for not selecting the Plaintiff. Namely, Warden Stewart, the selecting official, reviewed the applications and determined that the other candidates had better knowledge, skills and abilities for the position. Finally, Plaintiff can produce no evidence to demonstrate that the Defendant's reasons are, more likely than not, motivated by discriminatory animus.

WHEREFORE, the Defendant respectfully requests that summary judgment in favor of the Defendant be issued.

Respectfully Submitted,
KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

ALAN MARC SOLOWAY
ASSISTANT U.S. ATTORNEY
PO BOX 1824
NEW HAVEN, CT 06508
(203)821-3700
FEDERAL BAR # CT 01581

NATALIE HOLICK
ASSISTANT GENERAL COUNSEL
BUREAU OF PRISONS
GATEWAY COMPLEX TOWER II
400 STATE AVENUE, 8TH FLOOR
KANSAS CITY, KANSAS 66101
(913) 531-8333
FEDERAL BAR # CT 24206

## CERTIFICATION

This is to certify that a copy of the within and foregoing Memorandum was sent via postage prepaid first-class mail, this  day of October, 2003, to:

Samuel M. Rizzitelli, Jr., Esq.
26 Prindle Avenue
Derby, CT 06418
(203) 736-9800

Daniel H. Kryzanski, Esq.
959 Main Street
#103
Stratford, Ct. 06615

ALAN MARC SOLOWAY