UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 NOV -4  A 11: 51

US DISTRICT COURT
BRIDGEPORT CT

KENNETH K. RADMAN,
                    Plaintiff :

: Civil Docket #302CV1868JCH

v.

John D. Ashcroft, Attorney General   : November 3, 2003
U.S. Department of Justice
                    Defendant

**Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment**

Pursuant to Rule 56 of the FRCP and Rule 9(c) of the LRCP, Plaintiff moves this Court to deny the Defendant's Motion for Summary Judgment dated October 14, 2003.

**ISSUE**

Whether the Defendant discriminated against the Plaintiff, based on his gender (male), when he was not selected for a Materials Handler Supervisor (vacancy announcement no. 96-DAN-17) at the Federal Correctional Institution, Danbury, Connecticut.

**BACKGROUND**

The Plaintiff (male) has been a correctional officer at the Federal Correctional Institution, Danbury, Connecticut since December 30, 1991 to the present date. The Plaintiff applied for and was rated as "best qualified" for Materials Handler Supervisor (vacancy announcement no. 96-DAN-17) on July 31,1996. He was, however, not selected. The Selectee (female), who had

Page 1 of 12

been hired by the Defendant on October 29, 1995 (rookie) and was a correctional officer as well, was incorrectly listed as "best qualified" for the same position and was selected and promoted to the position at issue on August 15, 1996. The Plaintiff contacted an EEO Counselor on August 20, 1996; filed a formal complaint with the United States Equal Employment Opportunity Commission on October 3, 1996[1]; and exhausted his administrative remedy before filing this complaint in this Court.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hermes Int'l v. Lederer de Paris Fifth Ave, Inc.*, 219 F.3d 104, 107 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994)). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)) (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be

---

[1] The U.S. EEOC issued a decision on May 21, 2002 that concluded that summary judgment of this case was improper (Plaintiff's Complaint, Attachment 1).

appropriate. *Gallo,* 22 F.3d at 1223-24.

In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255; *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir. 2000)." *Richardson v. Metro. Dist. Comm'n,* 2003 U.S. Dist. LEXIS 12757 (D. Conn., July 23, 2003).

## DISCRIMINATION CLAIM LEGAL STANDARD

A plaintiff may prove discrimination either by direct evidence or by inference from circumstantial evidence as prescribed by the Supreme Court in *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973). The *McDonnell Douglas* framework, however, is inapplicable where the plaintiff presents direct evidence of discrimination. *Trans World Airlines, Inc. v. Thurston,* 469 U.S.111 (1985); *Raniola v. Bratton,* 243 F.3d 610, 621 (2d Cir. 2001).

> "Once the plaintiff establishes by direct evidence that an illegitimate factor played a motivating or substantial role in an employment decision, the burden falls to the defendant to prove by a preponderance of the evidence that it would have made the same decision even if it had not taken the illegitimate factor into account. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S. Ct. 1775, 1795, 104 L. Ed. 2d 268 (1989) (plurality opinion); *id* at 1798-99 (O'Connor, J., concurring); See *Berl v. County of Westchester,* 849 F.2d 712, 714-15 (2d Cir.1988).
> Shifting the risk of nonpersuasion to the employer is sensible in such cases, for as the Court has emphasized, "the employer is a wrongdoer; he has acted out of a motive that is

declared illegitimate by the statute. It is fair that he bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing." *Price Waterhouse*, 109 S. Ct. at 1790 (quoting *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 403, 76 L. Ed. 2d 667, 103 S. Ct. 2469 (1983))." *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989).

"Direct evidence" is defined as evidence which, if believed, "will prove the particular fact in question without reliance upon inference or presumption." *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989). Direct evidence of a discriminatory motive may be any written or verbal policy or statement made by an agency or agency official that, on its face, demonstrates a bias against a protected group and is linked to the complained of adverse action. *EEOC's "Revised Enforcement Guidance on Recent Developments in Disparate Treatment Theory."* Although direct evidence is not limited to evidence from which no inferences need be drawn, it is evidence that "relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of" *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990); *EEOC v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990). Once the trier of fact has accepted the direct evidence, liability is established. *EEOC Policy Guidance on Recent Developments in Disparate Treatment Theory*, No. 915.002, July 14, 1992, Section III.

**ARGUMENT**

A. Plaintiff can prove that the Defendant discriminated against him when the Defendant did not select the Paintiff for the promotional position vacancy announcement 96-DAN-17.

The Plaintiff was discriminated against because of his gender. Federal EEO law broadly

prohibits discrimination affecting the "terms, conditions, or privileges" of employment and "should be accorded a liberal interpretation to effectuate the intention of Congress to eliminate the inconvenience, unfairness, and humiliation of . . . discrimination." *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir., 1971), *cert. denied*, 406 U.S. 957 (1972). "Strictly speaking, the only "direct evidence" that a decision was made "because of" an impermissible factor would be an admission by the decision-maker such as "I fired him because he was too old."" *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992) (citing *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176).

According to the Defendant's selecting official who did not select the Plaintiff in favor of a female, less qualified applicant, Warden Stewart, the Paintiff's gender was a consideration in his decision. The following excerpt from the deposition of Warden Stewart is just an example of the blatant gender discrimination staged against the plaintiff:

> "Question: When you selected Gail Mazzucco over Ken Radman for 96-DAN-17, was this benefit of female for female inmates a consideration?
> Answer: It was one of my considerations, yes." (Defense Exhibit 10, Pages 49).

The following excerpt from Warden Stewart's affidavit helps confirm this direct evidence:
> "Question: Is there anything else you would like to say in regards to this complaint, Sir?
> Answer: ...Again, I chose a female and a male, which I feel will lead the Institution into a balanced work force." (Defense Exhibit 3, Page 7).

The entire record to date is saturated with these statements. (Defense Exhibit 3, Pages 5 - 7; Defense Exhibit 10, Pages 14, 16, 19, 21, 48, 49; Defense Exhibit 5, Pages 7 and 8; Plaintiff Exhibit A, Page 8; Plaintiff Exhibit B, Page 6). The selecting official, Warden Stewart had, therefore, expressed that the Plaintiff, Kenny Radman, was not promoted because he was a male. These answers given by the selecting official, Warden Stewart, are direct evidence that the

selecting official discriminated against the plaintiff because of his gender. The selecting official's statements are perfectly analogous to "I fired him because he was too old." *See Id.* These statements are the clearest example of direct evidence of a discriminatory motive to promote the selectee solely because she was a female. This is direct and conclusive evidence of discrimination.

> "In sum, if the plaintiff presents evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, and that evidence is sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision, the jury should be instructed that if it does draw that inference the plaintiff is entitled to recover unless the employer has established by a preponderance of the evidence that the employer would have taken the same action without consideration of the impermissible factor. The jury should also be instructed, in substance, that the "employer may not meet its burden in [a mixed-motives] case by merely showing that at the time of the decision it was motivated only in part by a legitimate reason ... The employer instead must show that its legitimate reason, standing alone, would have induced it to make the same decision.""
> *Id.* at 182-183 (quoting *Price Waterhouse*, 490 U.S. at 252 (plurality opinion); *see id.* at 261 (White, J., concurring); *id.* at 276-77 (O'Connor, J., concurring).

B. The Defendant cannot show that it would have made the same selection despite the discriminatory motive.

There were three candidates for the promotion at issue here and were ranked, objectively, according to the Merit Promotion Ranking based on their knowledge, skills and abilities. The Plaintiff, Kenny Radman, ranked #1; Steve Jones ranked #2; and the Gail Mazzucco (female selectee at issue here) ranked #3 (Plaintiff's Exhibit D). It is clear that the Plaintiff was much better qualified, objectively, than the female selectee chosen by the selecting official. Therefore, the Defendant cannot show, objectively, that it would have made the same selection despite the discriminatory motive.

C. The Defendant cannot establish that it promoted the selectee according to a bona fide occupational qualification.

The Defendant has just now argued that it discriminated against the Plaintiff for a good reason (Defendant's Motion for Summary Judgment dated October 14, 2003, page 8 and 9).[2] The nonselection at issue was not made pursuant to a legitimate bona fide occupational qualification ("BFOQ").

> "The BFOQ exception is recognized as very narrow, and only applies when the essence of the business operation would be undermined by not hiring members of one sex exclusively. *Torres v. Wisconsin Dep't of Health & Social Services*, 859 F.2d 1523, 1527 (7th Cir. 1988) (en banc), *certiorari denied*, 489 U.S. 1017, 103 L. Ed. 2d 194, 109 S. Ct. 1133. There is a relatively well-developed body of case law concerning the application of the BFOQ defense to jailers and other prison officials. *See, e.g., Dothard v. Rawlinson*, 433 U.S. 321, 53 L. Ed. 2d 786, 97 S. Ct. 2720 ; *Torres*; *United States v. Gregory*, 818 F.2d 1114 (4th Cir. 1987), *certiorari denied*, 484 U.S. 847, 98 L. Ed. 2d 99, 108 S. Ct. 143 ; *Garrett v. Okaloosa County*, 734 F.2d 621 (11th Cir. 1984); *Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir. 1982); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079 (8th Cir. 1980), *certiorari denied*, 446 U.S. 966, 64 L. Ed. 2d 825, 100 S. Ct. 2942. These cases recognize that Title VII's proscription against sexual discrimination in employment must be balanced against issues of inmate privacy and jail security in the context of the particular facts at hand. Stereotypical notions of a female's abilities, however, or unwarranted modesty, is not sufficient to justify a male-only position. *Torres*, 859 F.2d at 1527. Administrative convenience also cannot justify limiting a position to one sex. *Gunther*, 612 F.2d at 1082. Because of the Supremacy clause, state laws regarding the care of male and female prisoners must give way to Title VII when necessary. *See Garrett*, 734 F.2d at 624 ("The mere fact that a state enacts a discriminatory regulation does not create a BFOQ defense."); *Op. Wisc. Att'y Gen.*, No. 53-81 (October 2, 1981) (concluding that Title VII superseded predecessor to § 302.41 when female jailers did not perform strip- or pat-down searches of male prisoners and did not accompany or observe prisoners during toileting or bathing)."
> *Reidt v. County of Trempealeau*, 975 F.2d 1336, Footnote 3 (7th Cir., 1992).

The Defendant should not be allowed to produce evidence, so clearly in contravention to

---

[2] The defendant argued this position in direct contravention to the relentless denials of such made during discovery. (Plaintiff's Exhibit E).

the position that it has taken, consistently, throughout discovery. Therefore, Plaintiff renews and incorporates herein by reference, its discovery dispute, as a motion in limine, according to this Court's October 3, 2003 order regarding the discovery dispute outlined in Plaintiff's Motion to Compel dated July 14, 2003, to prohibit the introduction of Defense Exhibit 4 which was not produced in any way prior to the Defendant's Motion for Summary Judgment. *See Update Art, Inc. V. Modiin Pub., Ltd.*, 83 F.2d 67 (2d Cir. 1988); *Shepard v. Frontier Communications Services, Inc.*, 92 F. Supp.2d 279, 286 (S.D.N.Y.2000). In addition, pursuant to Federal Rule of Civil Procedure 37(c)(1) and 37(b)(2)(B), Plaintiff moves this Court to prohibit the Defendant from presenting a defense of a BFOQ since the Plaintiff has been denied the opportunity to conduct discovery on this reversed position taken by the Defendant, now, in its Motion for Summary Judgment. Plaintiff also seeks sanctions, as deemed appropriate by the Court, for this very unjustifiable and inexcusable act by the Defendant.

### D. The Defendant cannot establish an affirmative defense or show that it made a good faith attempt to implement an Affirmative Action Plan.

The affirmative action plan, effective during the period at issue here (Plaintiff's Exhibit F), is not a legitimate reasonable justification for the non-selection of the Plaintiff. When an agency considers its affirmative action plan in the selection of a candidate, the court must determine the validity of the plan. *Johnson v. Transportation Agency of Santa Clara County, California*, 480 U.S. 616, 626,(1987); *See also Grutter v. Bollinger*, 123 S. Ct. 2325, 2337-2338 (2003)(citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 at 230 (1995) (all racial classifications require strict scrutiny by the court). The purpose of the plan must be to break down old patterns of segregation and hierarchy and open up employment opportunities for

protected groups; it must not create an absolute bar to the advancement of non-minorities employees, or otherwise trammel the interests of those employees; and it must be temporary in the sense that it is designed to attain, not to maintain a balance among affected classes. *Johnson.* at 627-630.

The first issue is whether consideration of the sex of applicants for the Materials Handler Supervisor position was justified by the existence of a "manifest imbalance" that reflected underrepresentation of women in "traditionally segregated job categories." *Johnson* at 631. (Plaintiff's exhibit F). In sections D and E, the Plan identified underrepresented positions to target for affirmative action. The Material Handlers Supervisor position was not referenced. Ironically though, the position of Correctional Officer was identified as underrepresented and targeted for recruitment and affirmative action. That was the position that the Selectee held for a brief 10 months (rookie) before she was selected for the position at bar. A review of this plan clearly shows that it does not support the selecting official's claim that the institution needed a female as a Materials Handler Supervisor at that time. The selecting officials consideration of the Plaintiff's gender acted as an absolute bar to his advancement in this situation, in violation of the holding of *Johnson*.

The record reflects the fact that the Defendant cannot show that the selecting official's plan was to "break down an old pattern of segregation and hierarchy and to open up employment opportunities" for women at FCI Danbury. The Plan is devoid of any such analysis. Thus, under *Johnson*, Warden Stewart's stated reliance on a good faith attempt to implement the Defendant's affirmative action plan is not an acceptable excuse for discrimination against the Plaintiff because the affirmative action plan was not valid.

Lastly, the position taken by the Defendant in this case is completely perverse. *See Settlement Agreement, United States v. North Carolina, Department of Corrections*, Docket No. 5:93-CV-763-BOL (E.D.N.C. 1995) (Plaintiff's Exhibit G)[3]. The Defendant, in its official capacity as the Nation's chief enforcer of civil rights law, brought action against the State of North Carolina for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*, the exact same law that is the subject of this complaint, except that Defendant charged North Carolina with discriminating against women correctional workers and this complaint against the defendant was made for its discrimination against a male correctional worker. Surely, the defendant itself should be held to the same standard it held the State of North Carolina in that settled action, which cost the people of North Carolina more than $5,000,000.00.

## CONCLUSION

The Defendant cannot establish that the genuine issues for trial outlined above and stated in Plaintiff's Local Rule 9(c)2 statement below don't exist, and absent such a showing, the Defendant's Motion for Denial of Summary Judgment should be denied. *Radman v. U.S. Department of Justice, U.S. Equal Employment Opportunity Commission*, Appeal No. 01A02824, May 21, 2002 (citing *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986)).

---

[3] Plaintiff obtained this document through internet research; could not verify the legal validity of this document; and asks the Defendant to challenge such in its reply in order to develop an accurate record.

## Local Rule 9(c)2 Statement

1. Admitted
2. Admitted
3. Admitted
4. Admitted
5. Admitted
6. Denied: Defense Exhibit 3, Pages 5 - 7; Defense Exhibit 10, Pages 14, 16, 19, 21, 48, 49.
7. Denied: Defense Exhibit 5, Pages 7 and 8.
8. Admitted
9. Admitted
10. Admitted
11. Admitted
12. Admitted
13. Admitted
14. Admitted


## Local Rule 9(c)2: Material Facts Which Are Genuine Issues To Be Tried

1. Whether defendant illegally considered plaintiff's gender when it did not select plaintiff for vacancy announcement 96-DAN-17: Defense Exhibit 3, Pages 5 - 7; Defense Exhibit 10, Pages 14, 16, 19, 21, 48, 49; Defense Exhibit 5, Pages 7 and 8; Plaintiff Exhibit A, Page 8; Plaintiff Exhibit B, Page 6.

2. Whether plaintiff suffered damages as a result of discrimination by defendant: Plaintiff Exhibit C.


For the Plaintiff,

_____
Samuel M. Rizzitelli, Jr.
26 Prindle Avenue
Derby, Connecticut 06418
(203) 736-9800
Federal Bar No. CT20079

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing has been sent, via the mode indicated, this 3rd day of November, 2003 to the following:

| | |
|---|---|
| Alan Marc Soloway<br>Assistant U.S. Attorney<br>P.O. Box 1824<br>New Haven, CT. 06508<br>(203) 821-3700<br>(203) 773-5373<br>Federal Bar No. CT01581 | U.S. Mail, Postage Prepaid |
| Natalie R. W. Holick<br>Assistant General Counsel<br>Bureau of Prisons<br>Gateway Complex Tower II<br>400 State Avenue, 8th Floor<br>Kansas City, Kansas 66101<br>(913) 531-8333<br>Federal Bar No. CT24206 | U.S. Mail, Postage Prepaid |

For the Plaintiff,

_____
Samuel M. Rizzitelli, Jr.
26 Prindle Avenue
Derby, Connecticut 06418
(203) 736-9800
Federal Bar No. CT20079