**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KENNETH RADMAN,                      :
      Plaintiff,                :        CIVIL ACTION NO.
                              :        3:02-cv-1868 (JCH)
v.                                   :
                              :
JOHN ASHCROFT, ATTORNEY             :        NOVEMBER 22, 2004
GENERAL, U.S. DEPARTMENT OF         :
JUSTICE,                             :
      Defendant.                :

**JURY CHARGE**

I.     INTRODUCTION

You have now heard all of the evidence in the case and the final arguments of counsel. This brings us to the stage in the trial where you will soon undertake your final function as jurors. First, however, it is my duty to instruct you concerning the law that applies to this case.

You must take the law as I give it to you. Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than the view instructed by me. If any attorney or any witness or any exhibit has stated a legal principle different from one that I state to you in these instructions, it is my instructions that you must follow. Any witness's testimony concerning the law was testimony of his understanding of the law and is to be considered by you only with regard to his understanding. It is my instructions only that establish the law for your deliberations. You must take the law as I give it to you.

When you recess to deliberate, you will have a copy of my instructions for your

reference.  You must remember, though, that the instructions as a whole constitute the law of this case; you should not single out any one instruction.

At the outset of this trial, I gave you some preliminary instructions that were intended to serve as an introduction to the trial and to orient you to the particular case under consideration.  The instructions that I now will give are the final and complete instructions.  I believe that everything I am going to tell you now is consistent with the instructions I gave you at the start of the trial, but if you have any doubt, you should not rely on anything different that I may have said in the preliminary instructions.  The instructions I am now giving you must guide your deliberations in this case.

II.    ROLE OF JURORS

You must carefully and impartially consider all of the evidence in the case and apply the law as stated by the court to reach a just verdict.

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them. In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence.

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without bias, prejudice or sympathy, solely upon the evidence in the case and the applicable law. I know that you will do this and in that way reach a just and true verdict.

You should be guided solely by the evidence presented during trial, without regard to the consequences of your decision. You have been chosen to try the issues of fact and to reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy or bias interfere with your clear thinking, there is a risk that you will not arrive at a fair and just verdict.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate, in this charge or at any time during the trial, any opinion as to the facts or as to what your verdict should be. The rulings I have made during the trial are not any indication of my view of what your decision should be as to whether or not the plaintiff

has proven his case.  Of course, you will dismiss from your mind completely any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between the court and counsel held out of your hearing.

I also instruct you to draw no inference from the fact that, upon occasion, I asked questions of or gave instructions to certain witnesses.  These questions and instructions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinion on my part as to the verdict you should render, or as to whether any of the witnesses may have been more or less credible than any other witnesses.

III.    ALL PARTIES EQUAL BEFORE THE LAW

The fact that the defendant in this case is John Ashcroft, as the person responsible for the United States Bureau of Prisons, a U.S. government agency, entitles the defendant to no greater consideration than that accorded to any other party to a case.  By the same token, it is entitled to no less consideration.  All parties, whether the government or individuals, stand equal before the law and are to be treated as equals in this, a court of justice.

_____John Ashcroft, as head of the United States Department of Justice, is the proper party under the law to defend against an action for sexual discrimination against the United States Bureau of Prisons.

IV.    AGENCY

The United States Department of Justice and the United States Bureau of Prisons are deemed to be legal entities.  These government agencies cannot act otherwise than through their directors, officers, managers, employees, or other agents. Any act or omission of an officer, employee, manager, or other agent of a government agency, in the performance of his duties, and within the scope of his duties, is held in law to be the act of the government agency.

John Ashcroft, as Attorney General of the United States, is responsible for the actions taken by the Department of Justice, and its subsidiary agency, the Bureau of Prisons.  The Bureau of Prisons is responsible for the actions of its officers, managers, employees, or other agents.  Thus, with regards to the claim that is asserted against Attorney General Ashcroft, if the Bureau of Prisons is liable, based on the acts or omissions of its officers, employees, managers, or other agents, then Attorney General Ashcroft is liable, and if the Bureau of Prisons is not liable, Attorney General Ashcroft is not liable.

## V.    BURDEN OF PROOF

The party with the burden of proof on any given issue has the burden of proving every disputed element of his claim to you by a preponderance of the evidence.  If you conclude that the party bearing the burden of proof has failed to establish his claim by a preponderance of the evidence, you must decide against him on the issue you are considering.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or exhibits.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received into evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties - that it is equally probable that one side is right as it is that the other side is right - then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of the evidence - he must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof - that what the party claims is more likely true than not true - then that element will have been proved by a preponderance of the evidence.

Some of you may have heard of "proof beyond a reasonable doubt," which is the proper standard of proof in a criminal trial.  That standard does not apply to a civil case, such as this, and you should not consider it in this case.

VI.     ROLE OF ATTORNEYS

It is the duty of the attorney on each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the court to make rulings of law.

All those questions of law must be decided by me, the court.  You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked the court to rule on the law.

VII.    MEANING OF "PROVE" AND "FIND"

Throughout these instructions to you, I may use the word "prove" from time to time, with reference to the burden of proof.  I may also speak of your "finding" various facts as to elements of the claims made in this case.  You are to understand my use of the word "prove" to mean "prove by a preponderance of the evidence" even if I do not always repeat all of these exact words.  Similarly, when I say that you must "find" a fact in order to return a verdict in favor of the plaintiff or defendant, you must find that fact to have been proven by a preponderance of the evidence even if I simply use the word "find."

VIII.    WHAT IS AND IS NOT EVIDENCE

The evidence in this case is the sworn testimony of the witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

It is the witness's answers and not the lawyer's questions that are evidence.  At times, a lawyer may have incorporated into a question a statement that assumed certain facts to be true, and then asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.  Similarly, if an attorney described a witness's testimony, you should not accept that description as the witness's testimony.  It is your recollection of the witness's testimony that controls.

The lawyers are not witnesses.  What the lawyers have said in their closing arguments, in their objections, or in their questions is not evidence.  What they have said in their closing arguments is intended to help you understand the evidence and to reach your verdict.  However, if your recollection of the facts differs from what a lawyer says, it is your recollection that controls.

Testimony that has been stricken or excluded by the court is also not evidence and may not be considered by you in rendering your verdict.  In certain instances evidence was admitted only for a particular purpose and not generally for all purposes.  For the limited purpose for which it has been received, you may give such evidence the weight you decide it deserves.  You may not, however, use this evidence for any other purpose not specifically mentioned by the court.

-11-

Exhibits which have been marked for identification may not be considered by you as evidence unless and until they have been received in evidence by the court. Materials brought forth only to refresh a witness's recollection are not evidence. Any proposed testimony or proposed exhibit to which an objection was sustained by the court, and any testimony or exhibit ordered stricken by the court, must be entirely disregarded by you.

Anything I may have said during the trial, or what I may convey in these instructions, is not evidence. My rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. Finally, anything you may have seen or heard outside the courtroom or while the court was not in session is not evidence and must be entirely disregarded. You are to decide the case solely on the evidence received at trial.

IX.    DEPOSITION TESTIMONY

During the trial of this case, certain evidence has been presented to you by way of deposition testimony, which consists of sworn recorded answers to questions asked of the witness in advance of the trial.  Such deposition testimony is entitled to the same consideration, and is to be judged as to credibility, weighed, and otherwise considered by you in the same way, as if the witness had been present and had testified from the witness stand.

X.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Generally speaking, there are two types of evidence.  One type of evidence is direct evidence.  Direct evidence is evidence presented by a witness who testifies to what he saw, heard, or observed.  In other words, when a witness testifies about something he knows by virtue of his own senses, such as seeing, touching, or hearing, that is called direct evidence.  Direct evidence may also be in the form of an exhibit where the fact to be proved is the existence or content of the exhibit.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  That is, circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  Remember my rain example.  On the combination of facts that I asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.  It is not the only conclusion you could reach, nor must you reach that conclusion, but you could do so reasonably and logically.  All there is to circumstantial evidence is that you infer on the basis of reason, experience, and common sense, from established facts—in my example, a weather forecast and people with wet umbrellas and raincoats—the existence or non-existence of some other fact—that it has been raining.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that, before finding for the plaintiff, the jury must be satisfied that the plaintiff proved his or her case by a preponderance of the evidence based on all of the evidence in the case.

-14-

XI.    INFERENCES

During the trial you have heard the term "inference," and in the attorneys' arguments, they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact that has been shown to exist. There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defendant asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.  In drawing inferences, you should exercise your common sense.

Here again, let me remind you that, whether based upon direct or circumstantial evidence or upon logical, reasonable inferences drawn from such evidence, you must be satisfied that the plaintiff has proven the elements of his claim before you may find for him.

XII.    WITNESSES

Your decision on the facts of this case should not be determined by the number of witnesses testifying for or against a party.  You should consider all the facts and circumstances in evidence to determine which of the witnesses you choose to believe or not believe.  You may find the testimony of a single witness more credible than the testimony of a number of witnesses.  Indeed, you may find that the plaintiff has not met his burden of proof even when the defendant calls no witnesses.

You have had the opportunity to observe all the witnesses.  It is now your job to decide how believable each witness was in his testimony.  You and you alone are the judges of the credibility of each witness, which testimony to believe and which not to believe, and the importance of a witness's testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness?  When you watched a witness testify, everything a witness said or did on the witness stand counts in your determination.  What impression did the witness give you?  Did he appear to be frank, forthright, and candid, or evasive and edgy as if hiding something?  How did the witness appear?  What was his demeanor, that is, his carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says, but how he says it that moves us.

You should use all the tests for truthfulness that you would use in determining

matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party.  Evidence that a witness is biased, prejudiced, or hostile toward either the defendant or the plaintiff requires you to view that witness's testimony with caution, to weigh it with care, and subject it to close and searching scrutiny.  You should also consider the opportunity the witness had to see, hear, and know the things about which he testified; the accuracy of the witness's memory; his candor or lack of candor; his intelligence or the lack thereof; and the reasonableness and probability of his testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

If you find that any witness, whose testimony you are considering, may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony and accept it with care.  Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons participating in an event or witnessing an incident or transaction may see or hear it differently; an innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an insignificant detail, and whether the

discrepancy results from innocent error or from intentional falsehood.

You are not limited to just the factors I have mentioned.  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  Always remember that in assessing a witness's testimony, you should use your common sense, your good judgment, and your own life experience.

XIII.    IMPEACHMENT OF WITNESSES

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. If the impeachment results from evidence concerning a prior inconsistent statement, you must keep in mind that you may consider the earlier inconsistent statement only to aid in your decision concerning the credibility of the witness, and not to establish the truth of the earlier statement.

It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves. If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding what credence you will attach to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of such a witness, in whole or in part.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency and whether that explanation made sense to you.

XIV.   EXPERT WITNESSES

You have heard testimony from an expert.  An expert is allowed to express her opinion on those matters about which she has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing an expert's testimony, you may consider the expert's qualifications, her opinions, her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept the witness's testimony merely because she is an expert.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

XV.     JURY CAN ACCEPT OR REJECT TESTIMONY

You are not required to accept testimony even though the testimony is uncontradicted and the witness is not impeached. You may decide, because of the witness's bearing and demeanor or because of the inherent improbability of his testimony or for other reasons sufficient to you, that such testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be sufficient to convince you by a preponderance of the evidence of the existence of an essential element of the offense charged, if you believe that the witness has truthfully and accurately related what in fact occurred.

XVI.   KNOWLEDGE, WILLFULNESS, INTENT

Rarely is direct proof available to establish the state of one's mind.  This may be inferred from what he says or does: his words, his actions, and his conduct, as of the time of the occurrence of certain events.

The intent with which an act is done is often more clearly and conclusively shown by the act itself, or by a series of acts, than by words or explanations of the act uttered long after its occurrence.  Accordingly, intent, willfulness, and knowledge can be established by surrounding facts and circumstances as of the time the acts in question occurred, or the events took place, and the reasonable inferences to be drawn from them.

The term "knowingly" as used in these instructions means that the defendant was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident.

The term "willfully" as used in these instructions means that the defendant knowingly performed an act, deliberately, and intentionally, as contrasted with accidentally, carelessly, or unintentionally.

XVII.  STATEMENT OF THE CASE

Mr. Radman is currently a correctional officer at the Federal Correctional Institution at Danbury ("FCI-Danbury").  He claims that his present employer, the U.S. Bureau of Prisons, discriminated against him on the basis of his gender, in violation of a law known as Title VII of the Civil Rights Act of 1964, when it did not select him for promotion to the position of Materials Handler Supervisor at FCI-Danbury.  Mr. Radman alleges that the Bureau of Prisons selected a woman named Gail Mazzucco for this position, and that it impermissibly considered gender, in violation of Title VII, during the decision-making process.

The Bureau of Prisons and its employees deny this.

I will now explain, in detail, the elements Mr. Radman must prove by a preponderance of the evidence in order for you to find for him on his sex discrimination claim.

XVIII.  STATUTE

Mr. Radman bases his lawsuit on Title VII of the Civil Rights Act of 1964, as amended, or changed, by the Civil Rights Act of 1991.  The Act provides, in pertinent part, that it shall be an unlawful employment practice for an employer --

(1)    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .; or

(2)    to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .

XIX.   PROOF OF INTENT

The plaintiff, Mr. Radman, must show that the defendant intentionally discriminated against him.  Mr. Radman, however, is not required to produce direct evidence of intentional discrimination, although he is free to do so.  Intentional discrimination may be inferred from the existence of other facts.

XX.    ELEMENTS OF INTENTIONAL DISCRIMINATION UNDER TITLE VII

You must find for Mr. Radman on his employment discrimination claim if he has

proven both of the following elements by a preponderance of the evidence:

(1)    That the defendant failed to promote the plaintiff, and

(2)    that plaintiff's gender was a motivating factor in the defendant's decision.

You must find for the defendant if either of these elements has not been proved.

XXI.   MOTIVATING FACTOR

As used in these instructions, Mr. Radman's gender was a "motivating factor," if his gender played a part, or played a role, in the Bureau of Prison's decision to promote a female correctional officer to the position of Materials Handler Supervisor instead of the plaintiff, Mr. Radman.  However, Mr. Radman's gender need not have been the only reason for the Bureau of Prison's decision to promote Ms. Mazzucco to the position instead of Mr. Radman.  An unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice.

XXII.   MIXED MOTIVE

You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's gender and also by other reasons.  If you find that the plaintiff's gender was a motivating factor in the defendant's treatment of the plaintiff, you must then consider the role, if any, that any valid affirmative action plan may have played in the consideration of gender as a motivating factor.

XXIII.  AFFIRMATIVE ACTION

Affirmative action is lawful.  The purpose of affirmative action is to eliminate manifest imbalances in traditionally segregated, job categories.

The Bureau of Prisons claims that, while it may have considered sex in its decision to promote Ms. Mazzucco, it did so in accordance with a valid affirmative action plan when it considered Ms. Mazzucco and Mr. Radman's gender when it decided to promote Ms. Mazzucco instead of Mr. Radman.  Mr. Radman claims that the Bureau of Prisons' affirmative action plan was invalid, and, moreover, that the Bureau of Prisons did not act pursuant to its own plan when it made its promotion decision.  If the defendant promoted Ms. Mazzucco pursuant to a valid affirmative action plan, it did not violate Mr. Radman's rights under Title VII.  In order to prevail on his claim, Mr. Radman must therefore prove by a preponderance of the evidence either that:

(1)     the defendant's affirmative action plan is invalid; or

(2)     the defendant did not act pursuant to its affirmative action plan.

XXIV.  AFFIRMATIVE ACTION PLAN

In order for an affirmative action plan to be valid under Title VII, several things must be true:

(1)     the job at issue must be part of the plan;

(2)     the consideration of the sex of the applicants for the job must be justified by the existence of a manifest imbalance that reflects underrepresentation of women in traditionally segregated job categories;

(3)     the plan must not unnecessarily violate the rights of male employees or create an absolute bar to their advancement; and

(4)     the plan must be intended to attain, not maintain, a balanced work force.

Let me take a moment to expand a bit on each of these elements.

First, in order to use an affirmative action defense, the job of Materials Handler Supervisor must be part of the affirmative action plan in question.  In order for the Bureau of Prisons to justify the consideration of gender in making a promotion decision by pointing to its affirmative action plan, the job in question must be a part of that plan, that is, the job must be one of the jobs the plan holds out as requiring an affirmative action remedy.  If the job is not in the plan, the Bureau of Prisons cannot have used the plan when making a decision on the job.  However, if you find that the Materials Handler Supervisor job was a part of the affirmative action plan, then the first prong is satisfied. If, however, Mr. Radman has proved that the Materials Handler Supervisor job was not part of the plan, then you must find the plan to be invalid as it relates to this case.

In order to satisfy the second prong, the Bureau of Prisons' plan must only allow consideration of sex for the purpose of remedying underrepresentation of members of a particular sex in a traditionally segregated job category.  In order to determine whether

-30-

underrepresentation is present, the Bureau of Prisons' plan must make a comparison of the percentage of women in the Bureau of Prisons' workforce with the percentage of women in the area labor market or general population. Once the Bureau of Prisons finds such an imbalance exists by its comparison, and shows that sex was one of numerous factors used in making its promotion decision, it satisfies the second prong of the affirmative action test. If, however, Mr. Radman proved that either the underrepresentation did not exist, that the Bureau of Prisons did not produce the necessary information to show that such underrepresentation did exist, or that sex was not one of numerous factors used in making its decision, then you must find the plan to be invalid.

In order not to violate the rights of male employees unnecessarily, under prong three the Bureau of Prisons cannot use quotas or automatically exclude men from consideration for the job. The Bureau of Prisons plan must use sex as one of numerous criteria in its evaluation and not create an absolute bar to the advancement of men. Women must compete with all qualified candidates. If Mr. Radman proves that the plan bars or automatically excludes men from consideration, then you must find the plan to be invalid.

Finally, the Bureau of Prisons' plan must be intended to attain, not maintain, a balanced workforce. The goal of affirmative action is to remedy past discrimination by providing opportunities to previously excluded parties, in this case women. Once those opportunities are made available, the Bureau of Prisons' plan cannot be designed to maintain any set percentage of male or female workers. If Mr. Radman proves that the Bureau of Prisons plan is designed to maintain a set level of women in their workforce,

instead of attaining a balanced workforce to remedy past discrimination, then you must find the plan to be invalid.

In order to prevail on his claim, Mr. Radman must prove by a preponderance of the evidence that one or more of these four factors are not true with regard to the Bureau of Prisons/FCI Danbury Affirmative Action Plan.  If you find that one or more of these four factors is not true, then that Plan is not a basis to permit the consideration of gender, and you must find for Mr. Radman.

If you find that Mr. Radman has failed to prove that any one of these factors is not present in the Bureau of Prisons/FCI Danbury Affirmative Action Plan, then the affirmative action plan is valid.  You should next consider if Mr. Radman has proven that the Bureau of Prisons was not acting pursuant to that valid affirmative action plan when it decided not to promote Mr. Radman.

XXV.  ACTION TAKEN PURSUANT TO AFFIRMATIVE ACTION PLAN

If the Bureau of Prisons did not act pursuant to an affirmative action plan, even if the plan is valid, and merely considered Mr. Radman's gender during the decision-making process, then such consideration of gender is unlawful.  If you have found that sex was a motivating factor and was not considered pursuant to a valid affirmative action plan, then you should find for Mr. Radman.  If you have found that sex was a motivating factor, but the Bureau of Prisons acted pursuant to a valid affirmative action plan, then you should find for the Bureau of Prisons.

XXVI. BONA FIDE OCCUPATIONAL QUALIFICATION

In addition to affirmative action, another exception to the rule that an employer cannot consider the gender of applicants for a given position is that a certain sex, either male or female, is a bona fide occupational qualification for the job in question. The Bureau of Prisons does not raise this exception as a defense in this case. Thus, you should not consider whether it would be beneficial or convenient for the Bureau of Prisons to have a member of one sex, as opposed to the other, perform a job.

XXVII.     BUSINESS JUDGMENT

You may not return a verdict for Mr. Radman just because you might disagree with the Bureau of Prisons' decision not to promote Mr. Radman, or believe it to be harsh or unreasonable.

XXVIII.        CONSIDER DAMAGES ONLY IF NECESSARY

If you find that Mr. Radman has proven that the Bureau of Prisons' affirmative action plan was invalid or that the Bureau of Prisons did not act pursuant to a valid affirmative action plan, and if you find that the defendant's treatment of Mr. Radman was motivated by both gender and other lawful reasons, you must decide whether Mr. Radman is entitled to damages.  He is entitled to compensatory damages unless the Bureau of Prisons proves by a preponderance of the evidence that it would have treated Mr. Radman similarly even if the his gender had played no role in the employment decision.

If Mr. Radman has proven by a preponderance of the evidence that the Bureau of Prisons is liable on his claim, then you must determine the damages to which he is entitled.  However, you should not infer that he is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Mr. Radman is entitled to recovery.

XXIX.  COMPENSATORY DAMAGES

If you find in favor of Mr. Radman under the elements described in Section XX and under the Mixed Motive instruction given in Section XXII, then you must award Mr. Radman such sum as you find by the preponderance of the evidence will fairly and justly compensate him for any damages you find he sustained as a direct result of the Bureau of Prison's decision to promote a female correctional officer to the position of Materials Handler Supervisor instead of Mr. Radman.  Mr. Radman claims damages for mental anguish, emotional pain, suffering, or inconvenience.

However, if under the Mixed Motive instruction in Section XXII you find that the defendant proved by a preponderance of the evidence that the defendant would have treated Mr. Radman similarly even if his gender had played no role in the employment decision, you should not award any compensatory damages.

XXX.  MITIGATION OF DAMAGES

Any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to mitigate, or minimize, those damages.  The law imposes on an injured person the duty to take advantage of reasonable opportunities he may have to prevent the aggravation of his injuries, so as to reduce or minimize his loss or damages.

Bear in mind that the question of whether Mr. Radman acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts.  Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself unreasonably or incur unreasonable expense in an effort to mitigate, and it is the Bureau of Prisons' burden to prove that the damages reasonably could have been avoided.  In deciding whether to reduce Mr. Radman's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the Bureau of Prisons has satisfied its burden of proving that Mr. Radman's conduct was not reasonable.

XXXI.  DAMAGES - PROXIMATE CAUSE

You are not to award damages for any injury or condition from which Mr. Radman may have suffered, or may now be suffering, unless he has proved by a preponderance of the evidence that such injury or condition was proximately caused by the actions of the Bureau of Prisons.

An injury or damage is proximately caused by an act, or failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

XXXII.        DAMAGES: NOT SPECULATION, GUESSWORK OR SYMPATHY

With regard generally to the determination of damages, you must not speculate or guess.  You must bear in mind at all times that the burden is on Mr. Radman to prove that any claimed element of damage was a proximate consequence or result of a defendant's conduct, as well as to prove the reasonable amount of any damages with respect to any such element.

Also remember that your decision cannot be based on sympathy.  Sympathy can play no part in your decision.  Sympathy, bias, or prejudice, for or against any party, should not have the slightest influence upon you in reaching your verdict.

However, no evidence of the value of such intangible things as mental or emotional distress has been or need be introduced.  In that respect, it is not value you are trying to determine, but rather an amount that will fairly compensate the plaintiff for the damages he has suffered.  There is no exact standard for fixing the compensation to be awarded on account of such elements of damage.  This is a matter that is left to the conscience, good sense and sound judgment of the jury.  You should not act unreasonably through bias, passion or sympathy, but should exercise common sense and fix an amount of damages, that, in accordance with the evidence and the law, will fairly compensate the plaintiff for all the injuries suffered.

XXXIII.       NOMINAL DAMAGES

If you find, after considering all the evidence presented, that the defendant violated the plaintiff's rights or breached a duty owed to the plaintiff, but that the plaintiff suffered no injury as a result of this violation or breach, you may award the plaintiff "nominal damages."  "Nominal damages" are awarded as recognition that the plaintiff's rights have been violated.  You would award nominal damages if you conclude that the only injury that a plaintiff suffered was the deprivation of his constitutional rights, without any resulting physical, emotional or financial damage.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

You may not award both nominal and compensatory damages to a plaintiff; either he was measurably injured, in which case you must award compensatory damages, or else he was not, in which case you may award nominal damages.

Nominal damages may not be awarded for more than a token sum, say one (1) dollar.

XXXIV.        PUNITIVE DAMAGES

You may not award punitive damages to Mr. Radman in this case, even if you find in his favor on all of the elements.  You may only award damages to compensate him, as described in Section XXIX.

XXXV.         ATTORNEY'S FEES

When you consider damages, you should not take into account any attorney's fees incurred by the plaintiff in pursuing this case.  The decision to award, or not to award, attorney's fees, as appropriate, will be made by the court.

XXXVI.       CONCLUSION OF ELEMENTS

This concludes my instructions on the elements of the plaintiff's claim.  Mr. Radman must prove all of these elements by a preponderance of the evidence before you can return a verdict in his favor.  If Mr. Radman fails to prove all of the elements by a preponderance of the evidence, then you must return a verdict in favor of the defendant, John Ashcroft, Attorney General.

XXXVII.     NOTE TAKING

I have now concluded the instructions relating to the specific charge in this case. In closing, I must add a few general instructions concerning your deliberations. You were permitted to take notes during the course of the trial. Any notes you have taken should be used only as memory aids; do not give your notes precedence over your independent recollection of the evidence. If you did not take notes, you should rely on your own recollection of the proceedings and should not be influenced by the notes of other jurors.

XXXVIII.    CLOSING REMARKS

Let me now say a few words about your deliberations.

First, keep in mind that nothing I have said in these instructions—indeed, nothing I have said or done during this trial—is intended to suggest to you in any way what I think your verdict should be.  That is entirely for you to decide.

When you retire to the jury room, it is your duty to discuss the case with your fellow jurors for the purpose of reaching agreement if you can do so.  Each of you must decide the case for yourself, but you should do so only after considering all the evidence, listening to the views of your fellow jurors, and discussing the case fully with the other jurors.

It is important that you reach a verdict if you can do so conscientiously.  You should not hesitate to reconsider your own opinions from time to time and to change them if you are convinced that they are wrong.  However, do not surrender an honest conviction as to the weight and effect of the evidence simply to arrive at a verdict.

Remember that your verdict must be unanimous.  If you take a vote during deliberations and you are not unanimous, then you have not reached a final decision one way or another and should continue to deliberate.

Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, not on anything else.  Closing arguments, or other statements or arguments of counsel, are not evidence.  If your recollection differs from the way counsel has stated the facts, then your recollection controls.

Remember at all times that you are not partisan.  Rather, you are the judges of the facts, and your sole interest is to seek the truth from the evidence in this case.

The instructions that I gave you at the beginning of the case about outside factors apply during your deliberations.  Do not discuss this case with anyone outside the jury deliberation room, even with your fellow jurors.  Also, do not read or listen to any outside information about the case during your deliberations.  And do not try to do any research or make any investigation.  And, of course, continue to refrain from speaking to the parties, their attorneys, the witnesses, and me.

Upon retiring to the jury room you should first elect one among you to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.

A verdict form has been prepared for your convenience.  The verdict form is not evidence in this case, nor should you view it as supplementing or modifying in any way my instructions to you on the law.  Your answers must reflect the conscientious judgment of each juror and must be unanimous.  The verdict form includes instructions to guide you in filling out the form and follows the order of these instructions.

You will take the verdict form to the jury room.  When you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, and then date and sign the verdict form.  Then inform the court security officer that you have reached a verdict.  I stress that each of you must be in agreement with the verdict as contained in the verdict form and announced in court.  Your verdict must be unanimous.

You are about to go into the jury room to begin your deliberations.  Please wait to begin deliberations until the deputy clerk brings the verdict form and exhibits in to you. It will take a few minutes to gather the exhibits.

If you want any of the testimony read, you must request that.  Please remember

that it is not always easy to locate what you might want.  It can take a long time to find it, so please consider that.  If you feel you really need testimony read back, be as specific as possible in your request.

Any communication with the court should be made to me in writing, signed by your foreperson, and given to the court security officer seated outside the jury room.  If you send out a question, I will consult with counsel before answering it, which may take some time.  You may, if you can, continue your deliberations while waiting for the answer to any question.  I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I must also caution you that, in your communications with the court, you should not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, on the question of finding for the plaintiff or the defendant, until after you have reached a unanimous verdict.  Never disclose any vote count in any note to the court.

It is proper to add a final caution.

Nothing that I have said in these instructions—and nothing that I have said or done during the trial—has been said or done to suggest to you what I think your verdict should be.  What the verdict shall be is your exclusive duty and responsibility.

This completes my instruction to you.  At this time, I ask the jurors to retire to the jury room to consider your verdict.  Thank you for your service so far and thank you in advance for your careful and thoughtful deliberations.