UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNETH K. RADMAN,<br>    Plaintiff<br><br>        v.<br><br>John D. Ashcroft, Attorney General<br>U.S. Department of Justice<br>        Defendant | :<br>:<br>: Civil Docket #302CV1868JCH<br>:<br>:<br>:<br>:<br>: November 29, 2004<br>: |

**Plaintiff's Renewed Motion for Judgment as a Matter of Law After Trail**

Plaintiff, Kenneth Radman, submits this memorandum of law in support of his renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).

I. The preponderance of the evidence (agreed upon facts, admissions by defendant and testimony) established that gender was a motivating factor in the Bureau of Prisons' decision not to promote plaintiff to Materials Handler Supervisor; and there was no evidence in the case upon which reasonable persons could fairly conclude that defendant did not consider gender as a motivating factor in the Bureau of Prisons' decision not to promote plaintiff.

The Jury answered the following question only as follows:

1. Has Mr. Radman proved by a preponderance of the evidence that gender was a motivating factor in the Bureau of Prisons' decision not to promote him to Materials Handler Supervisor?
                Yes _____     No __X__

Federal Rule of Civil Procedure 50(a) allows the court to take a case away from the jury by entering a judgment in favor of the moving party where there is such a complete absence of evidence that no reasonable juror could find in favor of the non-moving party. *Wimmer v. Suffolk County Police Dept.*, 176 F.3d. 125, 134 (2d Cir. 1999), *cert, denied*, 528 U.S. 964; 120 S. Ct.

398; 145 L. Ed. 2d 310 (1999).

According to the Joint Pre-Trial Memorandum submitted by the parties on September 17, 2004, paragraph 6.C. Agreed Joint Statement to be Read to the Jury: "The warden whom selected the female officer instead of the plaintiff has stated that he did in fact select her, in part, because she was a female.  The defendant has also asserted the same."

The following admissions were made by the defendant and read to the jury:

**Admitted on 8-7-03:**
12) The Agency selected Gail Mazzucco for vacancy announcement no. 96-DAN-17, at least in part, because she was a female.

13) The selecting official considered the Agency's affirmative action plan during the selection of Gail Mazzucco when it hired her for vacancy announcement no. 96-DAN-17.

**Admitted on 8-7-03:**
19) Part of the motivation for the selection of Mazzucco for vacancy announcement no. 96-DAN-17 was to develop a correctional environment of female staff members for the female inmate population.

20) Part of the motivation for the selection of Mazzucco for vacancy announcement no. 96-DAN-17 was to have a female staff member in that position to perform strip searches of the female inmate population.

**Admitted on 11-6-03:**
23) Part of the defendant's defense in this case is that it selected Gail Mazzucco instead of the plaintiff for vacancy announcement no. 96-DAN-17 according to affirmative action.

24) Cindy Lord (human resource manager at time of selection at issue) stated that the department at issue in vacancy announcement no. 96-DAN-17  needed a female worker to conduct strip searches (of inmates) at the time of the selection.

25) Janice Killian (Associate Warden responsible for position at issue at time at issue) stated that it was imperative to have a female officer working the position in dispute (vacancy announcement no. 96-DAN-17).

26) Ron Schmidlin (department head of position at time at issue here) stated that the department at issue in vacancy announcement no. 96-DAN-17 needed a female worker.

27) Karen Porucznik (supervisor of position at time at issue here) stated that she preferred to have at least two female worker in the department at issue in vacancy announcement no. 96-DAN-17 at the time of the selection.

Most importantly, the selecting official, Warden Stewart, testified by deposition that he took gender into consideration when he denied the plaintiff the promotion:

>(Page 15, lines 10 through 13):
>   Q. Was gender a consideration in the selection of Gail Mazzucco in this vacancy announcement?
>   A. Again, it would be some consideration.
>
>(Page 19, lines 13 through 17):
>   Q. Did affirmative action have a bearing on your selection of Gail Mazzucco for the position of material handler's supervisor Vacancy Announcement No. 96-DAN-17?
>   A. It played some consideration, yes.
>
>(Page 49, lines 6 through 9):
>   Q. When you selected Gail Mazzucco over Ken Radman for 96-DAN-17, was this benefit of a female for female inmates a consideration?
>   A. It was one of my consideration, yes.

The entire trial record is saturated with additional testimony supporting the fact that the defendant considered gender when it did not select the plaintiff and there is not one sliver of proof that denies, contradicts or even raises an issue with that fact. Therefore, the court should find, as a matter of law, that the Bureau of Prisons took gender into consideration when it did not select him for promotion to Materials Handler Supervisor because there is absolutely no evidentiary basis for a reasonable jury to find otherwise. In the absence of a judgment as a matter of law, the Court should order a new trial on this issue in order to avoid a serious miscarriage of justice.

<u>II. The preponderance of the evidence established that the Bureau of Prisons' affirmative action plan was invalid; and even if it didn't the preponderance of the evidence established that the Bureau of Prisons' did not act pursuant to its affirmative action plan at FCI Danbury.</u>

The jury did not render a verdict on these two questions.

"If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party ... with respect to a ... defense that cannot under the controlling law be maintained ... without a favorable finding on that issue." FRCP 50(a).

The FCI Danbury 1996 Affirmative Action Plan was not valid (Trial Exhibit 9). It was required to have a comparison of local workforce with civilian labor force statistics (Trial Exhibit 11, § 502.b.). It did not. The drafter of the plan, Millie Sheriden, testified that it did not have the required content and at the end of her testimony, agreed that the plan was not valid. The supervisor of the drafter of the plan, Cindy Lord, testified substantially the same. There were absolutely no facts at trial to contradict, dispute or raise this factual issue. Therefore, the Court should find, as a matter of law, that the 1996 Affirmative Action Plan was not valid.

Regardless of the validity of the plan, the defendant did not act pursuant to it. The plan had a section that identified targeted positions (Trial Exhibit 9, § D). The position of Materials Handler Supervisor was not listed, and therefore, was not targeted. Furthermore, the FCI Danbury 1997 Affirmative Action Plan did not list the same position as a 1996 affirmative action accomplishment (Trial Exhibit 10, page 1). Both Millie Sheriden and Cindy Lord substantiated this flaw during their respective testimonies at trial. Similarly, there were absolutely no facts introduced during the trial to contradict, dispute or raise this factual issue. Therefore, the Court should find, as a matter of law, that the defendant did not act pursuant to its Affirmative Action Plan when it did not select the plaintiff for Material Handler Supervisor.

    <u>III. The defendant did not prove, by a preponderance of the evidence, that the Bureau of Prisons would have promoted Ms. Mazzucco instead of Mr. Radman even if it had not considered gender as a factor.</u>

    The jury did not render a verdict on this factually disputed issue and the defendant has been fully heard on this issue. The defendant claimed that it would have hired Ms. Mazzucco over the plaintiff, despite its discriminatory motive, because she was a better candidate than the plaintiff. The defendant has not proposed any other theory (other than BFOQ and Affirmative Action) for not selecting plaintiff.

    The evidence shows that the plaintiff was objectively better qualified than Ms. Mazzucco according to the Merit System Rating System (Trial Exhibit 8). Debra Truchess also testified that Ms. Mazzucco was not supposed to be on the "best qualified" list if the defendant had followed its own regulations (Trial Exhibit 6, § 15). If Ms. Mazzucco was not on the "best qualified" list, the selecting official could not have selected her and the only other candidate would have been the plaintiff. Despite this evidence, the defendant has claimed that it would have selected Ms. Mazzucco anyway, because she was a better candidate than the plaintiff.

    The trial record starts with Warden Stewart deposition testimony. First, he testified that he believed Gail Mazzucco had better performance than the plaintiff (Warden's depo, page 27, lines 15 -17). However, the tally sheets in Trial Exhibit 8 show the plaintiff had better performance, consistently. Next, Warden Stewart testified on the competing candidates experience. His first statement was that "it was a toss-up" (Warden's depo, page 30, lines 11 - 12). Then, Warden Stewart testified that Ms. Mazzucco was better experienced (Warden's depo, page 33, lines 10 -11). However, the tally sheets in Trial Exhibit 8 show the plaintiff had better experience, consistently.

Finally, Warden Stewart addressed the candidates relative training and education and concluded that Ms. Mazzucco had better education (Warden's depo, page 33, lines 21 -22). When asked whether education was a requirement of the position, the Warden responded that he didn't know because he didn't have a copy of the position description (Warden's depo, page 33, line 25 - page 34, lines 2 - 3). According to the position description, education was not a required quality (Trial Exhibit 5). This was affirmed by the tally sheets (Trial Exhibit 8) and witnesses Cindy Lord and Debra Truchess.

The testimony of Warden Stewart, the selecting official, has not satisfied the defendant's burden of proving that it would have selected Ms. Mazzucco over the plaintiff despite the discriminatory motive, simply because none of his statements are true according to the objective evidence of record. The Court may disregard testimony that is contrary to undisputed physical facts. *See e.g., O'Connor v. Pennsylvania R.R. Co.*, 308 F.2d 911 (2d Cir. 1962) (testimony about snowfall disregarded when contrary to the records of the Weather Bureau). When reviewed in this light, it is even clearer that he was not, in reality, motivated by anything other than gender.

The defendant called Janice Killean to testify. She claimed to have recommended Ms. Mazzucco to the selecting official, Warden Stewart. However, when asked if anyone recommended Ms. Mazzucco to him, Warden Stewart answered, "not to my knowledge" (See Warden's depo, page 9, lines 13 - 16). Regardless, Janice Killean provided reasons why she believed Ms. Mazzucco was a better candidate than the plaintiff. These reasons included the facts that Ms. Mazzucco spent her own time trying to learn the position, appeared more enthusiastic and had a college degree. In her testimony at trial, Janice Killean admitted not

knowing about the Merit System Promotion results of the respective candidates and she changed her testimony on the fact that she felt it was "imperative" to have a female selected for the position in dispute.

      This testimony of Janice Killean did not satisfy the defendant's burden of proof that it would have hired Ms. Mazzucco despite its discriminatory motive. First, her testimony is not consistent with Warden Stewart's reasoning; nor was it an independent basis for Warden Stewart's decision. Without any link to Warden Stewart's decision, it is somewhat irrelevant. Second, Janice Killean's new set of important qualities did not correspond to the Merit System stated elements (Trial Exhibits 1 and 2, last pages). This subjective substitution of standards is inherently unfair because she could always find a couple of qualities one candidate has over another and then claim that such were most important to her. Besides the fact that a college degree was not an important element for Material Handler Supervisors according to the Merit Promotion System, the unequal emphasis Janice Killean placed on the fact that Ms. Mazzucco practiced the position in her free time simply doesn't logically translate into the conclusion that Ms. Mazzucco was a better candidate than the plaintiff.

      Finally, the most noteworthy part of Janice Killean's testimony is the fact that she first testified that she never said it was "imperative" to have a female in the position in dispute. Her story changed, however, when she was confronted with a prior inconsistent statement. Then, she remembered how important it was to her to have a female in that position and she explained the need to have a female there to do strip searches of inmates. She testified extensively about the importance of having a female there for strip searches. When compared to the insignificance she placed on the candidates other qualities (besides gender), it is clear that gender was the

overriding motivating factor in Janice Killean's decision to recommend Ms. Mazzucco to the selecting official.

The defendant placed much emphasis during trial on the fact that the plaintiff had not taken a correspondence course. However, in the candidates applications (Trial Exhibits 1 & 2), each has a page titled "NFC Employee Training System Record of Individual Training". When compared, it is obvious that even though Ms. Mazzucco took a correspondence course, the plaintiff had much more training than her.

Based on this complete trial record and without any jury verdict on this issue, the Court should find, as a matter of law, that the defendant failed to satisfy its burden of proof that it would have selected Ms. Mazzucco instead of the plaintiff absent its discriminatory motive. In the absence of a judgment as a matter of law, the Court should order a new trial on this issue.

### IV. Damages

If the Court rules, as a matter of law, that gender was a motivating factor as outlined in part I above; and that the affirmative action plan was not valid or the defendant didn't act pursuant to it as outlined in part II, then the plaintiff has established liability for illegal discrimination entitling him to damages.

> "'Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.'" 42 U.S.C. § 2000e-2(m). *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (U.S., 2003).

> "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the

unlawful employment practice), or any other equitable relief as the court deems appropriate ... " 42 USC § 2000e-5(g)(1).

The extent of these remedies, however, depends on how the Court rules on the issue outlined in Part III above.

> "With respect to a claim in which an individual proves a violation under section 2000e-2(m), the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff. The available remedies include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs. 42 U.S.C. § 2000e-5(g)(2)(B). In order to avail itself of the affirmative defense, the employer must "demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94-95 (U.S., 2003).

<u>The preponderance of the evidence established that Mr. Radman suffered as a result of the Bureau of Prisons' discrimination.</u>

The jury did not render a verdict on this issue. The plaintiff testified that he suffered damages as a result of the non-selection. His testimony included evidence that he was depressed and humiliated, lacked self confidence and self esteem, lost ambition, was forced to continue to work shift work which disrupted his social life and physical well being.

The next witness on damages was the good friend of the plaintiff, Michael Sheriden, who testified that he worked with the plaintiff during the time that he was not selected for the position in dispute and has stayed in touch with him ever since. Mr. Sheriden also testified that he witnessed the plaintiff's depression, humiliation, lacked self confidence and self esteem, lost ambition, frustration and difficulty with working continued shift work over the past eight years. He explained that he knew the plaintiff before the non-selection and compared that experience with the plaintiff's symptoms after the non-selection to conclude that the damages the plaintiff suffered were a direct result of the discriminatory action.

Next, Mr. Sangalli testified that he began to work with the plaintiff in 1998. He

explained that other officers made fun of the plaintiff and ridiculed him at work because of the non-selection. He also testified that he became friends with the plaintiff and during many conversations with him, became familiar with the plaintiff's frustration, depression and other sufferings that resulted from the non-selection.

Ronald (Buck) Griffin testified on damages as well. Mr. Griffin explained how he helped train the plaintiff as a correctional officer in 1992, and shortly thereafter became friends with him. He testified that he knew of the plaintiff's ambition to move up through the Material Handler Supervisor position. He also explained how distressed the plaintiff was within the first day of the discriminatory action. Mr. Griffin also witnessed the sufferings of the plaintiffs for the years following the non-selection. His testimony included witnessing the plaintiff suffer depression, humiliation, lack of self confidence, low self esteem and the physical pains of shift work. Mr. Griffin concluded that these sufferings were a result of the non-selection and he based this on his knowledge of plaintiff and experience as a coworker and friend.

Finally, the defendant called Dr. Cohen to testify. She explained that she had conducted an individual medical examination of the plaintiff. She also testified that the plaintiff was suffering from depression and other ailments. Most importantly, on cross examination, she concluded that "While one can never be certain of the exact contribution of the biological and environmental factors which together lead to the onset of Major Depression, over the past six years Mr. Radman had several significant life stressors. These include his disappointment at work and subsequent lawsuit."

The testimony in this case shows that the plaintiff has proved that he suffered emotional distress as a result of the non-selection of the materials handler supervisor position. In the

absence of a judgment as a matter of law, the Court should order a new trial on this issue.


For the Plaintiff,

_____
Samuel M. Rizzitelli, Jr.
26 Prindle Avenue
Derby, Connecticut 06418
(203) 736-9800
Federal Bar No. CT20079

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing has been sent, via the mode indicated, this 29th day of November, 2004 to the following:

| | |
|---|---|
| Alan Marc Soloway | U.S. Mail, Postage Prepaid |
| Assistant U.S. Attorney | |
| P.O. Box 1824 | |
| New Haven, CT. 06508 | |
| (203) 821-3700 | |
| (203) 773-5373 | |
| Federal Bar No. CT01581 | |
| | |
| Natalie R. W. Holick | U.S. Mail, Postage Prepaid |
| Assistant General Counsel | |
| Bureau of Prisons | |
| Gateway Complex Tower II | |
| 400 State Avenue, 8th Floor | |
| Kansas City, Kansas 66101 | |
| (913) 531-8333 | |
| Federal Bar No. CT24206 | |

For the Plaintiff,

_____
Samuel M. Rizzitelli, Jr.
26 Prindle Avenue
Derby, Connecticut 06418
(203) 736-9800
Federal Bar No. CT20079