## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH K. RADMAN, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02-cv-1868 (JCH) |
| v. | : | |
| | : | |
| JOHN ASHCROFT, ATTORNEY GENERAL, | : | |
| U.S. DEPARTMENT OF JUSTICE | : | SEPTEMBER 16, 2005 |
| Defendant. | : | |

### RULING RE: PLAINTIFF'S RENEWED MOTION FOR JUDGMENT
### AS A MATTER OF LAW AFTER TRIAL [DKT. NO. 74]

Plaintiff Kenneth K. Radman ("Radman") brought this civil action against U.S.

Attorney General John Ashcroft, in his official capacity, and the United States

Department of Justice, Federal Bureau of Prisons (the "Agency"), pursuant to Title VII

of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-16 *et seq*.,

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, and the Equal Access to

Justice Act ("EAJA"), 28 U.S.C. § 2412.[1]  A jury trial was held on November 17, 18, and

22, 2004.  At the time of his jury trial, Radman pressed only his Title VII claim.

Radman, who is male, alleged that the Agency discriminated against him based on his

gender in violation of Title VII during the Agency's hiring process for the position entitled

Material Handler Supervisor, Vacancy Announcement No. 96-DAN-17 (the "Position").

Radman moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) at the

close of all evidence.  The court reserved ruling on the motion and submitted Radman's

---

[1]  Radman's complaint also included a count alleging age discrimination pursuant to the
Age Discrimination in Employment Act, the FLSA, and the EAJA.  The court granted the
Agency's Motion to Dismiss this count [Dkt. No. 5] by endorsement on April 4, 2003.

claim to the jury.  The jury returned a verdict for the defendant.  Radman now brings a timely renewed motion for judgment as a matter of law pursuant to Rule 50(b), or in the alternative, a motion for a new trial pursuant to Fed. R. Civ. P. 59.[2]  See Pl's Renewed Mot. J. Matter of Law at 11 ("Pl's JMOL").  The Agency opposes the motions.  For the reasons stated below, Radman's motion for judgment as a matter of law, or in the alternative, motion for a new trial is granted in part and denied in part.

## I.    BACKGROUND

The following background is taken primarily from rough transcripts of the November trial.[3]  Radman has been employed at the Federal Corrections Institution, Danbury, Connecticut ("Danbury") as a corrections officer since December 30, 1991.[4]  On July 31, 1996, Radman applied for one of two identical openings for a Material Handler Supervisor, position number 96-DAN-17.  As part of the decision-making process, the Agency ranks its applicants pursuant to a Merit Promotion Plan.  The Agency's Merit Promotion Ranking report ranked Radman as the most qualified applicant, and the Agency put him on the "Best Qualified" list.  Radman has undertaken

---

[2]  While Radman does not specifically reference Rule 59 in his motion papers, Rule 50 specifically invokes Rule 59 as the proper federal rule under which to bring an alternative motion for a new trial.  Therefore, the court will treat Radman's alternative motion as being made pursuant to Rule 59.

[3]  Neither party ordered an official trial transcript of the November trial.  Therefore, neither party cites to the official record in their motion papers.

[4]  Danbury's inmate population is now, and was at the time this dispute arose, all female.

some college level classwork, but has not received a college degree.

Two other applicants, Steven Jones, a male, and Gail Mazzucco, a female, also received a rating of "Best Qualified".  Ms. Mazzucco began working at Danbury as a corrections officer on October 29, 1995.  She holds a bachelor's degree in Criminal Justice.  On August 12, 1996, Warden Charles Stewart, the official in charge of the promotion process at the Agency, selected Mr. Jones and Ms. Mazzucco to fill the two available positions.

In October 2002, Radman filed the instant suit.  A jury trial was held on Radman's sole remaining Title VII claim in November 2004.  At trial, Radman presented significant evidence that the decision-makers at the Agency considered gender when they decided which employees to promote to Material Handler Supervisors.  Radman's evidence came in the form of answers to interrogatories, deposition testimony, and live testimony.  Additionally, Radman presented evidence that he was a more qualified candidate for the Material Handler Supervisor positions than Gail Mazzucco, that the Agency's affirmative action program was invalid, and that, even if the program was valid, that the Agency's actions did not comply with their own affirmative action guidelines.  Radman also elicited testimony on the issue of damages.

The government presented evidence that Mazzucco was more qualified for the job than Radman.  Additionally, the government presented evidence that Radman's damages were not proximately caused by any alleged discrimination and that the Agency would have promoted Mazzucco over Radman even if it had not considered

gender as part of its decision-making process.  The government also presented

evidence that FCI-Danbury needed a female Material Handler Supervisor to perform

strip searches on the inmates[5] and that the Agency acted pursuant to their affirmative

action plan when they filled the Position.

Following the parties' closing statements, the court charged the jury.  As part of

the jury charge, the court instructed the jury on the elements of a Title VII claim.  The

court stated:

> You must find for Mr. Radman on his employment discrimination claim if
> he's proven both of the following elements of his claim by a
> preponderance of the evidence.  One, that the defendant failed to
> promote the plaintiff and two, that plaintiff's gender was a motivating
> factor in the defendant's decision.  You must find for the defendant if
> either of these elements has not been proved.

The court also instructed the jury concerning the meaning of "motivating factor."  It

stated:

> As used in these instructions, Mr. Radman's gender was a "motivating
> factor," if his gender played a part, or played a role, in the Bureau of
> Prison's decision to promote a female correctional officer to the position of
> Materials Handler Supervisor instead of the plaintiff, Mr. Radman.
> However, Mr. Radman's gender need not have been the only reason for
> the Bureau of Prison's decision to promote Ms. Mazzucco to the position
> in question instead of Mr. Radman.  An unlawful employment practice is
> established when the complaining party demonstrates that sex was a
> motivating factor even though other factors may also have motivated that
> practice.

---

[5] However, the government specifically denied that it was making an argument based
on "bona fide occupational qualification."

Upon completion of its deliberations, the jury returned a verdict for the defendant.  The first question on the verdict form asked "Has Mr. Radman proved by a preponderance of the evidence that gender was a motivating factor in the Bureau of Prisons' decision not to promote him to Materials Handler Supervisor?"  The jury answered this question in the negative and, pursuant to the verdict form's instructions, did not answer any other question on the form.  It is from this verdict that Radman appeals for judgment as a matter of law, or in the alternative, a new trial.

## II.     STANDARD OF REVIEW

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis.  See Fed. R. Civ. P. 50.  The standard under Rule 50 is the same as that for summary judgment: A court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (citation and internal quotation marks omitted).  Thus, in deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).  In short, the court cannot "substitute its judgment for that of the jury." LeBlanc-Sternberg v. Fletcher, 67

-5-

F.3d 412, 429 (2d Cir. 1995) (citations omitted).  Rather, judgment as a matter of law

may only be granted if:

    (1)    there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or

    (2)    there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

Galdieri-Ambrosini, 136 F.3d at 289 (quoting Cruz v. Local Union No. 3 of the Int'l Bhd.

of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994)) (internal quotation marks omitted);

see also Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997).

    Moreover, "weakness of the evidence does not justify judgment as a matter of

law; as in the case of a grant of summary judgment, the evidence must be such that 'a

reasonable juror would have been compelled to accept the view of the moving party.'"

This Is Me, Inc., 157 F.3d at 142 (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir.

1993)).  The court "must view the evidence in the light most favorable to the party in

whose favor the verdict was rendered, giving that party the benefit of all reasonable

inferences that the jury might have drawn in his favor."  Norton v. Sam's Club, 145 F.3d

114, 118 (2d Cir. 1998) (citation omitted); see also Mickle v. Morin, 297 F.3d 114, 120

(2d Cir. 2002) (court must draw all reasonable inferences in favor of the non-moving

party).  Additionally, in making its determination, the court "'must disregard all evidence

favorable to the moving party that the jury is not required to believe.'"  Mickle, 297 F.3d

at 120 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)).

Thus, "[a] party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden." Norton, 145 F.3d at 118.

Furthermore, Rule 50(b) provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59.

Under Rule 59, a new trial "'should be granted when, in the opinion of the district court, the jury reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)).  "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence."  Id. This standard differs from the Rule 50 standard in two significant ways:

> Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict.  Moreover, a trial judge is free to weigh the evidence [herself], and need not view it in the light most favorable to the verdict winner.

Id. at 134 (citation omitted).  However, the court must bear in mind that it "should only grant such a motion when the jury's verdict is egregious."  Id. (quotation and citation omitted).  "Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility."  Id.

III.    **DISCUSSION**

A.    **Rule 50 Motion**

Radman argues that there is a complete absence of evidence supporting the government's position that gender was not a motivating factor in the Agency's decision to promote Mazzucco, and not Radman, to the position of Material Handler Supervisor. Radman points to deposition testimony by the decision-maker, Warden Charles Stewart, that gender was "some consideration" in his decision to promote Mazzucco. Radman also points to several admissions by the Agency that were read into the record at trial. Among these admissions was the following statement:

> Admission. The agency selected Gail Mazzucco for vacancy announcement no. 96-DAN-17, at least in part, because she was a female.

Additional admissions read into the record include statements that "[p]art of the motivation" for Mazzucco's promotion "was to develop a correctional environment of female staff members for the female inmate population," that "[p]art of the motivation" to promote Mazzucco "was to have a female staff member that that [sic] position to perform strip searches of the female inmate population," and that the selecting official "considered the agency's affirmative action plan during the selection of Gail Mazzucco" for promotion.

Also, at trial, the Assistant Warden at the time of the promotion decision, Janice Killian, testified that she recommended Gail Mazzucco for the promotion based on "a number of different factors . . . ." Killian testified that Mazzucco's gender was a "small

factor" and "play[ed] into" her recommendation.  Killian testified gender was "one of maybe four or five different factors to include her education, the fact that she communicated well, she had an excellent work ethic.  It was part of all part of that package."

The government argues that it presented enough evidence to allow a reasonable jury to find that, while gender was a consideration, it was not a *motivating* factor.  The government points to Second Circuit case law that implies that there is a threshold that a plaintiff must meet to prove that a factor was not merely considered but *motivated*, at least in part, an employer's decision.  Specifically, the government refers to case law that equates the term "motivating" with the term "substantial."

For example, in Fields v. New York State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 120 (2d Cir. 1997), the court stated that the plaintiff needed to prove that race "could be a substantial or a motivating factor, or could have made a difference . . . ."  Additionally, in Owen v. Thermatool Corp., 155 F.3d 137, 139 (2d Cir. 1998), the Second Circuit opined that "[t]he words 'substantial' and 'motivating' are reasonably interchangeable or at least have considerable overlap." (citing Fields, 115 F.3d at 120-21).  The natural implication of the idea that a plaintiff must prove a factor was a "substantial" factor is that there are factors, or considerations, that could be found by a reasonable jury to be "insubstantial" factors.

In this case, the Agency has admitted that gender was a "consideration."  In fact, there is strong evidence that a jury could have relied upon to find that gender was at

least one of the motivating factors behind the Agency's promotion decision.  However, the government has also presented evidence that Mazzucco could have been seen by the decision-maker as more qualified.  For example, the decision-maker himself, Warden Stewart, testified in his deposition that he felt Mazzucco "had the better performance" record and a better education when he made the promotion decision.  Assistant Warden Killian also testified that Mazzucco had many "wonderful qualities" including "extra energy" and great communications skills.  This evidence, when combined with Assistant Warden Killian's testimony that gender was a "*small* factor" could have been enough, as a matter of law, to convince the jury that qualifications, not gender, motivated the Agency to promote Mazzucco, and that the issue of gender was peripheral.  Keeping in mind that the court must draw all inferences in favor of the non-moving party, must not weigh witness credibility or the evidence itself, and the fact that weakness of the evidence is not a basis for judgment as a matter of law, the court cannot find that the plaintiff has met his heavy burden of showing that there is no legally sufficient basis upon which a jury could find that gender was not a motivating factor behind the Agency's decision to promote Mazzucco over Radman.  See Fed. R. Civ. P. 50.

The court does not address Radman's other arguments in the context of his Rule 50 Motion because the jury never reached any issue except "motivating factor."

The court is mindful that, on a motion for judgment as a matter of law, it is not to "substitute its judgment for that of the jury."  LeBlanc-Sternberg, 67 F.3d at 429.

-10-

Legally sufficient evidence was presented to the jury on each issue. Therefore, if the evidence is taken in a light most favorable to the government, the jury could have found that gender was not a motivating factor behind the Agency's promotion decision, that the Agency was working according to a valid affirmative action plan, that the Agency would have made the same decision regarding the promotion even if it completely disregarded gender, and that Radman's injuries were not proximately caused by the alleged discrimination. On this basis, Radman's motion for judgment as a matter of law is denied.

### B.    New Trial

As referenced in Section II, the standard under which the court decides a Rule 59 motion for a new trial and the standard for judgment as a matter of law are different in significant respects. Under Rule 59, the court may dispense with the requirement to view the evidence in a light most favorable to the non-moving party and is explicitly authorized to weigh the evidence. See DLC Mgmt. Corp., 163 F.3d at 134. The court may order a new trial when the jury verdict is against the weight of the evidence, and "should [grant a new trial] when, in the opinion of the district court, the jury reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." Id. at 133 (quotation omitted). However, the court must keep in mind that it should rarely disturb the jury's determination and should only do so "when the jury's verdict is egregious." Id. at 134.

In this case, the vast weight of the evidence weighs in favor of the conclusion that the jury "reached a seriously erroneous result" when it found that gender was not a "motivating factor" in the Agency's promotion decision.  Repeatedly, throughout both Warden Stewart's testimony (by deposition) and Assistant Warden Killian's testimony, the decision-makers at the Agency admitted that gender was a "consideration" and a "factor" in their personnel decisions, including the promotion decision at issue in this case.  For example, in his deposition Warden Stewart stated that the fact that Mazzucco was a female candidate in a female prison was "one of [his] considerations" when he made his promotion decision.

Additionally, on direct examination Assistant Warden Killian admitted that gender was a "small factor.[6] [Mazzucco] was able to strip search them.  We needed female staff in our institution.  That's one factor."  Later, on cross-examination, Killian testified that the fact that Mazzucco was female "played into" her decision to recommend Mazzucco and that gender was "one of maybe four or five factors" that Killian considered.  Asked explicitly "[d]id you consider the fact that Gail Mazzucco was a woman when you recommended her?", Killian replied, "Yes I did, along with other factors."  Finally, the Agency made the following admission concerning Gail Mazzucco's promotion:  "The agency selected Gail Mazzucco for vacancy announcement no. 96-

---

[6]  In fact, this reference to gender as a "small factor" represents the only occasion when either Warden Stewart or Assistant Warden Killian refer to gender in a manner that implies that it was not an equal consideration when compared to other factors in the Agency's promotion decision.

DAN-17, at least in part, because she was female."

Additionally, the government elicited a significant amount of testimony concerning FCI-Danbury's need for female personnel to perform strip searches on female inmates and the time, effort, and trouble male officers would need to go through if the need for a strip search arose.  Testimony along these lines was offered by Ms. Mazzucco herself and, as quoted in part *supra*, Assistant Warden Killian.  This included an admission by Killian on cross-examination that she previously stated that she felt that, "it was very important to have a female in [the Material Handler Supervisor position]."  In addition, an admission was read into the record that stated "[p]art of the motivation for the selection of Mazzucco for the vacancy announcement 96-DAN-17 was to develop a correctional environment of female staff members for the female inmate population."  Also, the Agency admitted that "[p]art of the motivation for the selection of Mazzucco for the vacancy announcement 96-DAN-17 was to have a female staff member that that [sic] position to perform strip searches of the female inmate population."  The record contains several other admissions along these lines.[7]  This testimony is strong evidence that gender was *a* motivating factor for the decision-makers at FCI-Danbury because they wanted a Material Handler Supervisor who could strip search female inmates on a regular basis with a minimum of hassle.

---

[7]  However, the government explicitly, and repeatedly, eschewed any argument that a certain gender was a "bona fide occupational qualification" for the job of Material Handler Supervisor.

The government also defended itself by invoking what it argues is a valid affirmative action plan. The government elicited testimony from Cynthia Lord, Human Resource Manager and Chairperson of the Merit Selection Board at FCI-Danbury, concerning the Agency's affirmative action needs. The testimony focused on FCI-Danbury's need for more female personnel. Also, Warden Stewart, in his deposition, testified that affirmative action was one consideration that he used when making personnel decisions at FCI-Danbury. Additionally, admissions were read into the record related to affirmative action that included an admission that "[t]he selecting official considered the agency's affirmative action plan during the selection of Gail Mazzucco when it hired her for vacancy announcement no. 96-DAN-17."

The jury never addressed the issue of the validity of the affirmative action plan, or whether the Agency acted pursuant to its plan. However, the important point at this juncture is that evidence on the issue was presented by both Radman and the Agency. The evidence presented by the government appears to be aimed at supporting the alleged fact that the Agency was acting pursuant to a valid affirmative action plan when it promoted Gail Mazzucco. This begs the question now before the court: can the Agency have acted according to its affirmative action plan in this situation if gender was *not* a motivating factor?

Should the affirmative action plan be found to be valid, it offers a defense to an impermissible discrimination claim. However, evidence that affirmative action was used, or attempted to be used, in the decision-making process is evidence that gender

was a motivating factor in the promotion decision, albeit a potentially benign factor.  The same can be said for the testimony elicited by the government concerning the need for female officials to perform strip searches on female inmates.  Evidence that the capacity to perform strip searches was important to decision-makers at FCI-Danbury is strong evidence that gender was a motivating factor, in fact a *deciding* factor, in Warden Killian's final decision to promote Mazzucco over Radman.  Evidence presented that there were other reasons for Mazzucco's promotion, namely her education, training, extra effort and communications skills, when weighed against and put into context with witnesses testimony concerning the consideration of gender appears to prove only that the Agency had a mixed motive when it made its promotion decision.

In the Rule 50 context, the court is bound to view the evidence in a light most favorable to the non-moving party and ignore the weight of the evidence.  Therefore, as described *supra*, the court cannot say that a jury, working under the instructions given by the court, could not have discredited all of the evidence that gender motivated, at least in part, the Agency promotion decision and focused solely on the evidence that Mazzucco was more qualified than Radman.  However, in the Rule 59 context, the court concludes that the evidence weighs so heavily in favor of a finding that gender was *a*, if not *the*, motivating factor behind the Agency's decision to promote Gail Mazzucco to Material Handler Supervisor rather than Kenneth Radman.  Therefore, the court finds that the jury reached a seriously erroneous result recognizable under Rule 59.

The Radman's motion for a new trial pursuant to Rule 50(b)(1)(B) and Rule 59 of the Federal Rules of Civil Procedure is granted.

## IV.    CONCLUSION

For the foregoing reasons, Kenneth Radman's motion for judgment as a matter of law, or in the alternative, motion for a new trial [Dkt. No. 74] is granted in part and denied in part.  Radman's Rule 50 motion for judgment as a matter of law is **DENIED**. His motion for a new trial pursuant to Rule 59 is **GRANTED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 16th day of September, 2005.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge